

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARLOS ORLANDO AMAYA CRUZ<br><br>*Defendant.* | **UNDER SEAL**<br><br>Criminal No. 1:24-mj-427<br><br>Count 1: Conspiracy to Distribute Five Kilograms or More of Cocaine Intending, Knowing, or Having Reasonable Cause to Believe that It Will Be Unlawfully Imported into the United States<br>(21 U.S.C. §§ 959(a), 960, 963) |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Jenna Sullivan, Task Force Officer of the Drug Enforcement Administration (DEA), Washington Division Office (WDO), Washington, D.C., being duly sworn, depose and state the following:

**INTRODUCTION**

1. I am a Detective with the Loudoun County Sheriff's Office (LCSO), Criminal Investigations, Special Operations Section, Leesburg, Virginia, and have been since 2015. I am currently assigned to the DEA High Intensity Drug Trafficking Task Force located in Reston, Virginia and have been since 2018. Prior to this assignment, I have been employed with the Loudoun County Sheriff's Office; Property Crimes Unit, Sex Crimes Unit; and the Special Operations Section, Tactical Enforcement Unit, since 2008.

2. As a narcotics investigator, I have participated in the application for and execution of many state and federal search warrants related to the investigation of narcotics and organized crime related offenses, resulting in the prosecution and conviction of many individuals and the seizure of illegal drugs, drugs proceeds in the form of bulk U.S. currency, weapons, and other

evidence of criminal activity. Additionally, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through training and experience, I am familiar with the methods used by traffickers of controlled substances and the nature and appearance of illegal narcotics. I have received extensive training in drug identification, drug distribution methods, and drug enforcement techniques from various federal, state, and local agencies.

3. Based on this experience, I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of drug abuse and trafficking. During my participation in investigations of narcotics trafficking organizations, I have testified at trial, grand jury proceedings, and preliminary hearings. During my employment with the LCSCO and the DEA, I have gained knowledge in the use of various investigative techniques, including the utilization of wiretaps, physical surveillance, undercover agents, confidential informants, cooperating witnesses, the controlled purchases of illegal narcotics, electronic surveillance, consensually monitored recordings, investigative interviews, financial investigations, the service of administrative and grand jury subpoenas, and the execution of search and arrest warrants. I am responsible specifically for the enforcement of the statutes of the Virginia Code pertaining to the possession and distribution of narcotics and controlled dangerous substances as well as federal drug trafficking laws under Title 21 of the United States Code. Furthermore, during my assignment with the DEA, I have investigated drug trafficking organizations (DTO) and Transnational Criminal Organizations (TCO) operating outside of the United States, specifically in Central and South America. I have become abreast of many of the operational methods of those DTOs and TCOs, some of which include narcotics trafficking, bulk

currency smuggling, trade routes, methods of concealment, bribery, acts of violence and operational tactics, all of which are used to further their criminal enterprise and import illegal narcotics into the United States.

4.   From in and around 2019 and continuing until May 2024, the exact dates being unknown, and in an offense begun and committed outside the jurisdiction of a particular State or District of the United States, including in the Republic of Honduras, and elsewhere, the defendant, CARLOS ORLANDO AMAYA CRUZ who will be first brought in custody to the Eastern District of Virginia, did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, intending, knowing, or having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960(a), and 963.

5.   Wherever in this affidavit I discuss information resulting from physical surveillance conducted in this investigation, that information, except where otherwise indicated, does not set forth my own personal observations, but rather that which has been provided directly or indirectly to me through other law enforcement officers who made such observations. Additionally, unless otherwise noted, wherever I assert that a statement was made by an individual, such statement is described in substance herein and is not intended to be a verbatim recitation of such statement. Furthermore, any statements excerpted from recorded conversations, including those that are quoted, are subject to further revision for clarification and/or accuracy.

6.   This affidavit contains information necessary to support probable cause for this application for a criminal complaint. It is not intended to include each and every fact and matter observed by law enforcement or known to the government regarding the investigation.

3

## PROBABLE CAUSE

7. Members of the Nino Drug Trafficking Organization (DTO), to include MARIO RODOLFO MEJIA CUBILLAS a/k/a "Yofo;" HUMBERTO CANTILLO DURAN, a/k/a "Nino" a/k/a "Juan Carlos;" EDGARDO RENE VELASQUEZ NAVARRO a/k/a "Burro;" CARLOS ORLANDO AMAYA CRUZ (hereinafter, "AMAYA CRUZ") and other indicted and unindicted co-conspirators, led one of the largest DTOs in Honduras—hereinafter, the "Yofo-Nino DTO"—responsible for the distribution of multi-ton quantities of cocaine, valued at millions of dollars, into the United States.

8. On September 7, 2023, a Grand Jury in the Eastern District of Virginia issued an indictment charging MEJIA CUBILLAS, CANTILLO DURAN and VELASQUEZ NAVARRO with conspiracy to distribute five kilograms or more of a substance containing a detectable amount of cocaine, intending, knowing, or having reasonable cause to believe that it will be imported into the United States. *See* Case No. 1:23-CR-142; *see also* 21 U.S.C. § 959(a). Thereafter, on October 21, 2024, VELASQUEZ NAVARRO pleaded guilty to one count of conspiracy to distribute five kilograms or more of a substance containing a detectable amount of cocaine, intending, knowing, or having reasonable cause to believe that it will be imported into the United States. On October 22, 2024, MEJIA CUBILLAS pleaded guilty to one count of conspiracy to distribute five kilograms or more of a substance containing a detectable amount of cocaine, intending, knowing, or having reasonable cause to believe that it will be imported into the United States.

9. The Yofo-Nino DTO's base of operation in Colón, Honduras provides a convenient location for the Yofo-Nino DTO to receive maritime shipments of cocaine from Colombia that are ultimately destined for the United States. The price of cocaine increases at each stage of the supply chain as it is transported from South America to Central America, and

then to Mexico, before being imported into the United States. The incremental price increases enable multiple DTOs to make substantial profits on the shipments of cocaine. Based on this, along with the facts uncovered by this investigation, I believe that all the cocaine seized by law enforcement associated with the Yofo-Nino DTO was destined for ultimate resale in the United States.

10. The Caribbean coastal region of Honduras is a primary landing zone for drug-carrying flights and maritime traffic. Large shipments of cocaine are delivered from Colombia to Honduras, to which cocaine shipments are further transported north through Honduras and Guatemala, into Mexico and then imported into the United States. This Honduran region is strategically critical for narcotics trafficking due to its remoteness, limited infrastructure, lack of government presence, and weak law enforcement institutions, which allows the Yofo-Nino DTO to successfully receive, conceal and transport cocaine shipments through the area.

11. The Yofo-Nino DTO is comprised of members of the MEJIA CUBILLAS family, members of the CANTILLO DURAN family, members of the VELASQUEZ NAVARRO family as well as other close associates, who perform various tasks and take on various roles in furtherance of the conspiracy. AMAYA CRUZ, among others, worked on behalf of the Yofo-Nino DTO in roles including transportation, organization, security, coordination, and logistics.

12. AMAYA CRUZ is a Honduran National and has been trafficking cocaine in Honduras since approximately 2020 and is a trusted member within the Yofo-Nino DTO.

**HONDURAN WIRETAP & SEIZURES OF COCAINE**

13. Beginning in and around 2021 and continuing to the present, Honduran law enforcement received judicial authority to conduct wire intercepts of the electronic

communications of the Yofo-Nino DTO. These wire intercepts allowed law enforcement to record electronic communications between the listed co-conspirators and the defendant and others conspiring to receive, transport, facilitate and/or distribute shipments of cocaine. United States law enforcement officials have obtained electronic communications of the defendant and his co-conspirators and others regarding events described below, as well as other acts in furtherance of this conspiracy.

14. Specifically, beginning in approximately January 2021 continuing through present, Honduran law enforcement intercepted numerous phone numbers used by AMAYA CRUZ after obtaining judicial authorization.

### March 5, 2021 200 Kilogram Cocaine Seizure

15. In or around February 25, 2021, Honduran judicial wire intercepts captured communications between CANTILLO DURAN, MEJIA CUBILLAS, VELASQUEZ NAVARRO, AMAYA CRUZ, and other members of the Yofo-Nino DTO discussing the logistics of receiving a shipment of approximately 2,000 kilograms of cocaine from Colombia. In or around March 4, 2021, Honduran judicial wire intercepts captured communications between VELASQUEZ NAVARRO, AMAYA CRUZ and other members of the Yofo-Nino DTO discussing markings on kilograms, sample kilograms and the movement of kilograms of cocaine.

16. Specifically on February 25, 2021, at 4:26 p.m. CANTILLO DURAN[1] spoke with an unindicted member of the Yofo-Nino DTO (hereinafter, "UCC-1")[2]. UCC-1 is a boat

---

[1] Throughout this affidavit, on the calls referenced, CANTILLO DURAN was using the -9713-7173 phone number.
[2] Throughout this affidavit, on the calls referenced, UCC-1 was using the -9603-8459 phone number.

6

captain for the Yofo-Nino DTO. CANTILLO DURAN provided UCC-1 with coordinates of 16.10, N 84.00 W and asked UCC-1 how much he would charge to receive; UCC-1 advised three hundred fifty (350) each. UCC-1 asked CANTILLO DURAN how many "animals" were coming and CANTILLO DURAN advised, about two-thousand (2,000). Through my training and experience and knowledge of this investigation, I believe that CANTILLO DURAN was asking UCC-1 how much UCC-1 would charge to receive a load of cocaine, and UCC-1 told him it was 350 U.S.D. per kilogram of cocaine. Through my training and experience and knowledge of this investigation, I also believe that the term "animals" is coded drug language for kilograms of cocaine.

17. Specifically on February 25, 2021, at 9:42 p.m. CANTILLO DURAN spoke with MEJIA CUBILLAS[3]. CANTILLO DURAN provided MEJIA CUBILLAS with the same coordinates he provided to UCC-1, 16.10 N, 84.00 W, and the two discussed receiving a shipment in that area.

18. Specifically on March 4, 2021, at 4:37 p.m. VELASQUEZ NAVARRO[4] spoke with AMAYA CRUZ[5]. VELASQUEZ NAVARRO advised AMAYA CRUZ that someone was arriving on March 5, 2021, and he wanted AMAYA CRUZ to give the man two hundred (200) "oranges." Through my training and experience and knowledge of this investigation, I believe the term "oranges" is coded drug language for kilograms of cocaine. VELASQUEZ NAVARRO and AMAYA CRUZ discussed which kilogram stamps were going to who,

---

[3] Throughout this affidavit, on the calls referenced, MEJIA CUBILLAS was using the -9535-1170 phone number.
[4] Throughout this affidavit, on the calls referenced, VELASQUEZ NAVARRO was using the -3229-4211 phone number.
[5] Throughout this affidavit, on the calls referenced, AMAYA CRUZ was using the -9537-0761 phone number.

specifically discussing kilograms with the markings R600, R67, 7R-67 and kilograms that did not have a brand. VELASQUEZ NAVARRO told AMAYA CRUZ that an unidentified individual has 485 kilograms of cocaine and that 11 of the 485 kilograms were for samples.

19. Specifically on March 5, 2021, at 8:27 a.m. VELASQUEZ NAVARRO spoke with AMAYA CRUZ. AMAYA CRUZ told VELASQUEZ NAVARRO that he spoke with the driver who confirmed he was picking up the load. AMAYA CRUZ and VELASQUEZ NAVARRO agreed to put 200 in the vehicle.

20. Specifically on March 5, 2021, at 5:35 p.m. an unidentified individual (over the phone number -9579-9423) spoke with another unidentified individual (over the phone number -3282-6941) who advised that he was with another unindicted member of the Yofo-Nino DTO (hereinafter, "UCC-2") at the TEXACO gas station. UCC-2 is a transporter for the Yofo-Nino DTO.

21. Based on Honduran judicial intercepts, on or about March 5, 2021, Honduran authorities stopped a truck at a TEXACO gas station in the Department of Cortes, Honduras. During the search of the truck, law enforcement officials located a false compartment containing approximately 200 kilograms of cocaine. A portion of the 200 kilograms seized contained the markings R67.

## CONCLUSION

22. Based on the facts outlined above, I respectfully submit there is probable cause to believe that in and around 2021 and continuing thereafter up to and including the present, the exact dates being unknown and in an offense begun and committed outside the jurisdiction of a particular State or District of the United States, including in the Republic of Honduras, and elsewhere, the defendant, CARLOS ORLANDO AMAYA CRUZ, who will be first brought to the Eastern District

8

of Virginia, did knowingly and intentionally combine, conspire, confederate, and agree with others, known and unknown, to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, intending, knowing, or having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960(a), and 963. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

*Jenna Sullivan*
Jenna Sullivan
Task Force Officer
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 via telephone on December 5, 2024.

/s/
William B. Porter
United States Magistrate Judge

The Honorable William Porter
United States Magistrate Judge

9